IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :  CRIMINAL NO. 16-494 |
| DONALD LEE HAAS | : |

**GOVERNMENT'S TRIAL MEMORANDUM**

The United States of America, by Louis D. Lappen, Acting United States Attorney for the Eastern District of Pennsylvania, and John Gallagher, Assistant United States Attorney, respectfully submits this trial memorandum to assist the Court in the trial of this matter. The trial is scheduled to commence on August 21, 2017.

**I.   THE INDICTMENT AND FACTUAL BACKGROUND**

On March 21, 2017, a federal grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging defendant Donald Lee Haas with one count of conspiracy to convey false information using a telephone, in violation of 18 U.S.C. § 371, four counts of conveying false information using a telephone, in violation of 18 U.S.C. § 844(e), and one count of conveying false information about carrying a bomb onto an airplane, in violation of 18 U.S.C. § 1992(a)(9). The superseding indictment alleges that the defendant and another individual agreed to use, and did use a telephone, on May 17, 2016, to communicate bomb threats to Paulie's Family Restaurant, in Coplay, Pennsylvania, TGI Friday's restaurant, in Allentown, Pennsylvania, the Lehigh Valley International Airport, in Allentown, Pennsylvania, and the Lehigh Valley Mall, located in Whitehall, Pennsylvania. In making these threats, the defendant identified himself as Charlee McWilliams, a neighbor with whom he had an ongoing

1

dispute. As a result of the threats, emergency personnel were forced to ground airplanes and close businesses, requiring the evacuation of airline travelers and restaurant patrons while a search for the bombs was conducted.

The defendant has filed a motion to suppress his admissions, doc. at no. 16, and a motion to admit past "bad acts" of a presumed trial witness, doc. at no. 19. Each of these motions are still pending before the Court.

The government filed a motion in limine to admit business records, doc. at nos. 13 and 18, and a motion in limine to admit tape recordings ("Starks Motion"), doc. at no. 14. Each of these motions were granted by the Court. Doc. at no. 34. The government has also filed a motion in limine to admit the pretrial testimony of the defendant. Doc. at no. 46.

At trial, the government will introduce testimony from law enforcement personnel and civilian witnesses regarding the bomb threat conspiracy charged in the superseding indictment. The government's evidence will also include a recording of the telephoned threat to the Lehigh Valley International Airport. Several law enforcement witnesses shall testify that they reviewed this recording and immediately recognized the voice as that of the defendant, with whom they have a strong familiarity from the defendant's employment as a tow truck operator in their jurisdiction. The government shall also introduce recordings made to law enforcement from TGI Friday's restaurant, the airport, and the Lehigh Valley Mall, reporting the bomb threats in the moments after each was received.[1] The government shall present business records, and certifications for such records, from (a) T-Mobile identifying the physical location ("ping" information) for the subject telephone, placing the telephone at the defendant's residence close in time to the bomb threats, (b) T-Mobile identifying the subscriber and call detail records for the

---

[1] These recordings were the subject of the aforementioned Starks motion.

2

subject telephone, establishing that this telephone was used to make the bomb threats, and indicating contacts between the telephone and individuals known to the defendant, (c) Target Corporation indicating date, location and purchaser of the subject telephone, namely Brandi Marsteller, the defendant's live-in girlfriend and co-conspirator, (d) BB&T Bank indicating that the debit card used to purchase the subject telephone belonged to Marsteller, (e) Pennsylvania Department of Transportation indicating that Marsteller did not have a driver's license at the time of the purchase of the subject telephone, and (f) T-Mobile identifying the location of cell site towers, in close proximity to the defendant's residence, as were accessed by the subject telephone at the time the threats were made.[2] The government shall also introduce the Kyocera cellular telephone, which was a pre-paid "burner" phone, which was acquired and activated without the need to provide the user's identity. The government shall also present admissions made by the defendant as discussed below. This evidence shall establish the following:

On March 30, 2016, Jeremy Korpics, owner of Stirling Painting, in Bath, Pennsylvania, received a voicemail from an anonymous male caller stating that Charlee McWilliams, a Stirling employee, was selling drugs to minors and should be fired. Korpics provided the recorded message to McWilliams who immediately recognized the caller as the defendant. McWilliams also played the recording for his landlord (then also the defendant's landlord). She also immediately recognized the caller as the defendant. At Korpics' direction, McWilliams reported the call to the South Whitehall Township Police Department but McWilliams also indicated that he did not want the defendant to be prosecuted.

On April 1, 2016, Marsteller purchased the Kycoera cellular telephone that was later used to make the threats charged in this case. Records from Target and BB&T Bank

---

[2] These records were the subject of the aforementioned motion to admit.

3

demonstrate that she purchased the phone from Target on Cedar Crest Boulevard in Allentown. It was a prepaid telephone which did not require the purchaser to provide identification at the time of purchase nor the time of activation. Records from T-Mobile indicate that the phone was activated on or about May 2, 2016. These records also show approximately two dozen additional calls from this phone to McWilliams' employers were attempted from May 2, 2016 through May 17, 2016.

On May 17, 2016, at approximately 6:40 p.m., Brittany Knauss answered a telephone call made to her employer, Paulie's Family Restaurant, located at 1214 Chestnut Street, Coplay, Pennsylvania. The call was made to the restaurant's main telephone line. Knauss said that the male caller identified himself by a name she could not recall and stated that he had placed a bomb in the restaurant. The caller then hung up. Knauss discussed the call with her supervisor but, given the small size of the restaurant and their familiarity with the patrons that day, they did not take the threat seriously and did not immediately report the threat to law enforcement.

On May 17, 2016, at approximately 6:53 p.m., Kristine Garcia answered a telephone call made to her employer, a TGI Friday's restaurant located at 395 South Cedar Crest Boulevard, Allentown, Pennsylvania. The call was made to the restaurant's main telephone line. Garcia, a hostess at the restaurant, said that the male caller identified himself as "Justin," and provided a last name and telephone number but did so too quickly for Garcia to document them. The caller, whom Garcia described as sounding like an older Caucasian male with a deep, raspy voice, said that he had been dissatisfied with food served to him in a recent visit to the restaurant. The male caller said, "The food was so fucking bad. I am going to fucking bomb the place so nobody else will have to eat your fucking disgusting food." The caller then hung up. Garcia

immediately reported the call to her manager, Michael Schuler, who evacuated the restaurant of customers and employees, and called the police.  Officers from the Allentown Police Department arrived and searched the restaurant.  Finding no explosives, the officers permitted the occupants to return, however, most of the patrons had already departed, without finishing their meals.

On May 17, 2016, at approximately 7:06 p.m., Robert Miller answered a telephone call in the course of his duties as an employee at the Lehigh Valley International Airport, 3311 Airport Road, Allentown, Pennsylvania.  The call was placed to the airport's main telephone line.  The caller, whom he described as sounding like an older, Caucasian male, made the following threat to Miller, which was recorded and retrieved by the case agent, "Yeah, this is Charlie McWilliams.  Ah, there's a bomb on one of your fucking planes."  Miller then inquired, "Which plane?"  The caller responded, "You find out," and the caller hung up.  Miller immediately notified his superiors, including Sergeant Stephen Gensits of the Lehigh Northampton Airport Authority Police Department.  Special Agent Matthew Van Durme of FBI Allentown was amongst the law enforcement personnel contacted by the Airport police.

As a precaution, Sgt. Gensits and the Transport Security Authority (TSA) grounded Sun Country Airlines Flight 8171, which was on the runway completing the boarding of passengers, most of whom were elderly, some with wheelchairs and walkers.  The TSA also grounded two charter flights, and two Federal Express cargo planes, each for several hours.  All planes, baggage and cargo were searched by a South Whitehall Police Department Officer Colin Beaumont and his bomb dog, Kimber.  The concourse where passengers board and debark from planes was also searched.  No explosive devices were located.  Flight 8171 was delayed approximately one hour and 21 minutes by the bomb threat.

On May 17, 2016, at approximately 7:17 p.m., Shawn Bogar answered a telephone call in the course of his duties as a security employee at the Lehigh Valley Mall, Whitehall, Pennsylvania. The call was placed to the shopping mall's main telephone line. The caller, who was described as sounding like an older, Caucasian male, stated to Bogar that another male, named Charlie McWilliams, had planted a bomb inside the mall. The caller provided an address for McWilliams on Huckleberry Road. The caller said that McWilliams had been dissatisfied with shoes purchased during a recent visit to the mall and had planted the bomb in response. Bogar immediately notified his superiors, including Security Supervisor Craig Jones. Jones directed his security officers and mall maintenance personnel to search all areas in which a bomb might be secreted. No explosives were located.

At approximately 8:25 p.m., officers from South Whitehall interviewed Charlee McWilliams at his residence. McWilliams told Officer Mark Ruff that he had no knowledge of the recent bomb threats. However, McWilliams immediately suspected that the calls were made by his neighbors, Haas and his live-in girlfriend, Brandi Marsteller, with whom McWilliams had a long standing dispute. Police records indicate prior complaints have been made by each side in the dispute. Officer Ruff attempted to make contact with Haas but there was no answer at the door. Ruff also tried to reach Haas by telephone but there was no answer on the telephone either.

Special Agent Van Durme and his FBI colleagues submitted an exigent request to RCN, the service provider for the Lehigh Valley International Airport, to determine the phone number that called in the threat in at 7:06 pm. RCN provided the mobile number 610-478-\*\*\*\* ("the subject telephone") as that number. A phone provider check was conducted for the subject telephone and it was determined to be a T-Mobile number. FBI personnel did an exigent request

6

to T-Mobile which determined the phone was a prepaid phone service that does not require proof of purchaser's identification at time of purchase.

On May 17, 2016, at approximately 8:00 p.m., given the need to swiftly investigate the multiple bomb threats, Special Agent Van Durme contacted T-Mobile and requested emergency access to data indicating the specific latitude and longitude (or other precise location information concerning) of the subject telephone (the so-called "ping" information). Using this ping information, Van Durme was able to determine that, on May 18 and 19, 2017, the subject telephone was located in the vicinity of 3830 Huckleberry Road, Allentown, Pennsylvania.

During this early stage of the investigation, Van Durme was also in contact with officers from the South Whitehall Police Department, which covers the area of 3830 Huckleberry Road. The officers were aware that Donald Haas, who then resided at 3830 Huckleberry Road, Apartment 2, had been involved in a dispute with his neighbor, Charlee McWilliams. The officers were also familiar with Haas, and could recognize his voice, from interactions they had with Haas during Hass's work as a tow truck operator. The officers listened to the recording of the bomb threat made to the airport. Officers Eric Kleintop and Kevin Smith immediately recognized the recorded voice of the caller to be that of Haas.

On May 19, 2017, at approximately 2 p.m., FBI Special Agents Matthew VanDurme and Joseph Bushner travelled to 3830 Huckleberry Road. The agents were dressed in plainclothes, with neither badges nor weapons visible. They were accompanied by two police officers from the South Whitehall Township Police Department. Lt. Michael Sorrentino was dressed in plainclothes, also with no badge or weapon visible, and Officer David Jones was in

7

uniform. These police officers were familiar to the defendant from the defendant's work as a tow truck driver in their jurisdiction.

Agents VanDurme, Bushner and Lt. Sorrentio knocked at the door of Apartment 2, which was answered by Brandi Marsteller, the live-in girlfriend of Defendant Donald Hass, and the mother of their then three-year-old child. They told her they were investigating the bomb threats and she agreed to speak with them. Marsteller told the investigators that she was home alone with Haas and their baby at the time the threatening calls were made. She initially denied any familiarity with the number of the telephone used to make the threats but she soon acknowledged that she had possession of the phone. She retrieved the Kyocera cellular telephone from the residence and gave it to the agents, saying she did not want it anymore. Marsteller then told the agents that she bought the telephone approximately one phone month prior, and did so in order to "get vengeance" on her neighbors Charlee McWilliams and Crystal Mingora, whom she blamed for the pending eviction of Marsteller and Haas, her boyfriend, from their apartment at 3830 Huckleberry Road. After denying knowledge of any bomb threat being made to the airport, Marsteller then said she had made the threat. Agent VanDurme was suspicious that Marsteller was covering for someone else because all of the threats were reported to have been made by male callers and, further, multiple police officers had recognized the caller to the airport to be the defendant. Van Durme's suspicions were enhanced by Marsteller's remarks that the defendant was the family's sole provider and that he had threatened her in the past. When Marsteller was told that the voice was that of a male caller, she said she had disguised her voice. When told that officers recognized the voice of Haas, she then said she did not make the threatening calls but she had not seen Haas do so either.

8

While VanDurme was speaking to Marsteller, the defendant drove up to 3830 Huckleberry Road as the sole occupant of a red pickup truck and parked in the parking lot directly outside his apartment residence. The agents greeted the defendant, identified themselves as FBI agents, informed the defendant that they were investigating threatening telephone calls, and inquired whether he would be willing to speak with them. The defendant agreed to speak with the agents.

During the course of their conversation, the defendant told investigators that he was home alone with Marsteller and their baby at the time the threatening calls were made. He further stated that he was intoxicated at the time these calls were made and, as a result, he could not remember everything that he said. However, he did state that he was angry at the neighbor, whom he blamed for the eviction of him and his girlfriend from their apartment. Therefore, he said he "could have made some threats," while the girlfriend dialed the telephone numbers and held the subject telephone in her hand. The defendant repeatedly and pointedly stated, "I did not dial the number to the airport." The defendant also admitted planning to call the neighbor's employer and make false allegations intended to cause the neighbor to lose his job.

Records obtained from T-Mobile subsequently confirmed that each of the bomb threats charged in this case were made from the phone recovered from the residence of Hass and Marsteller. These records further indicate that, at the time these calls were made, the phone was in contact with the cell tower closest to their residence, where both Haas and Marsteller acknowledge they were, home alone with their young child.

On April 3, 2017, this Court held a hearing on the defendant's motion to suppress the statements he made to the case agents. The defendant testified at this hearing. N.T.

4/3/2017, pp. 68-72.[3] In sum, he testified that an unidentified individual broke into his residence on Huckleberry Street, while he *and B.M.* were not at home, and used B.M.'s telephone to make the threatening calls. More specifically, he said that, at the time the threats were being made, he and B.M. were moving items into their soon-to-be residence on Murray Street. While at Murray Street, B.M. showed him her personal cellular telephone which indicated there was an incoming call from the "burner phone" used to make the threats in this case ("the 5981 phone"). The defendant said that B.M. told him that the 5981 phone was then back at their Huckleberry apartment. When they returned to Huckleberry shortly thereafter, Haas testified, "Somebody else was in my apartment because I had a piece of duct tape on the front door lock, and [B.M.] brought me up to the door, right, and I didn't go in the door. She said… I said, 'Oh, just go in the house and don't worry about it.' Well, I find out the next day $400 is missing out of my drawer." N.T. 4/3/2017, p. 71.

Tellingly, the defendant conceded that he did not call the police on the evening of May 17, 2016 to report this break-in. Nor did he report the break-in to the police the following day, May 18, 2016. Nor did he report the break-in, or tell agents of this apparent attempt by unknown others to use the 5981 phone, presumably to frame the defendant, when he spoke to the agents about the threats on May 19, 2016.

---

3 This testimony is the subject of the government's pending motion *in limine*.

## II. STATUTES CHARGED AND ELEMENTS OF THE OFFENSE

### A. Conspiracy to Convey False Information Using a Telephone, in violation of Title 18, United States Code, Section 371 (Count One)

In order to establish conspiracy to convey false information using a telephone, in violation of 18 U.S.C. §371, the government must prove the following elements beyond a reasonable doubt:

(1) That two or more persons agreed to commit an offense or offenses against the United States, as charged in the indictment, here, conveying false information using a telephone, in violation of in violation of 18 U.S.C. § 844(e);

(2) That the defendant was a party to or member of that agreement;

(3) That the defendant joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; and

(4) That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

### B. Conveying False Information Using a Telephone, in violation of Title 18, United States Code, Section 844(e) (Counts Two through Five)

In order to establish conveying false information using a telephone, in violation of 18 U.S.C. § 844(e), the government must prove the following elements beyond a reasonable doubt:

(1) The Defendant made, or caused to be made, a threat to unlawfully damage or destroy a building, vehicle, or other real or personal property by means of an explosive;

 (2) The Defendant used, or caused to be used, an instrument of commerce, such as a telephone, to communicate the threat; and

 (3) The Defendant acted knowingly and willfully.

Pattern Crim. Jury Instr. 11th Cir. OI O27 (2016), Pattern Crim. Jury Instr. 11th Cir. OI O27 (2016).

<u>Aiding and Abetting the Conveying False Information Using a Telephone</u>, in violation of Title 18, United States Code, Sections 844(e), and 2 (Counts Two through Five)

In order to establish the aiding and abetting of the conveying false information using a telephone, in violation of 18 U.S.C. §§ 844(e), and 2, the government must prove the following elements beyond a reasonable doubt:

 (1) That the principal committed the offenses charged by committing each of the elements of the offenses charged;

 (2) That the defendant knew that the offenses charged were going to be committed or were being committed by the principal; and

 (3) That the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the specific offenses charged and with the intent that the principal commit those specific offenses; and

 (4) That the defendant's acts did, in some way, aid, assist, facilitate, or encourage, the principal to commit the offenses.

**C.** **<u>Conveying False Information About Bombing an Airplane</u>, in violation of Title 18, United States Code, Section 1992 (Count Six)**

In order to establish conveying false information about bombing an airplane, in violation of 18 U.S.C. § 1992, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant knowingly, and without lawful authority or permission, communicated information;

(2) To place any destructive device in, upon, or near a mass transportation vehicle; and

(3) Knowing that information to be false.

<u>Aiding and Abetting the Conveying False Information About Bombing an Airplane</u>, in violation of Title 18, United States Code, Sections 1992, and 2 (Count Six)

In order to establish the aiding and abetting of the conveying false information about bombing an airplane, in violation of 18 U.S.C. §§ 1992, and 2, the government must prove the following elements beyond a reasonable doubt:

(1) That the principal committed the offenses charged by committing each of the elements of the offenses charged;

(2) That the defendant knew that the offenses charged were going to be committed or were being committed by the principal; and

(3) That the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the specific offenses charged and with the intent that the principal commit those specific offenses; and

(4) That the defendant's acts did, in some way, aid, assist, facilitate, or encourage, the principal to commit the offenses.

13

III. **WITNESSES**

The government may call the following witnesses in its case-in-chief:

1. Special Agent Matthew VanDurme (FBI)
2. Special Agent Joseph Bushner (FBI)
3. Diane Bachman, Investigative Operations Analyst, Cellular Telephone Records Analyst (FBI)
4. Lt. Michael Sorrentino, South Whitehall Police Department
5. Police Officer Mark Ruff, South Whitehall Police Department
6. Police Officer Eric Kleintop, South Whitehall Police Department
7. Police Officer Kevin Smith, South Whitehall Police Department
8. Police Officer David Jones, South Whitehall Police Department
9. Police Officer Paul Dickinson, South Whitehall Police Department
10. Police Officer Colin Beaumont, South Whitehall Police Department
11. Robert Miller, Operations Dispatcher, Lehigh Valley International Airport
12. Cpl. John Fiore, Lehigh Northampton Airport Authority Police Department
13. Sgt. Stephen Gensits, Lehigh Northampton Airport Authority Police Department
14. Chief Timothy Koder, Lehigh Northampton Airport Authority Police Department
15. Officer Scoble, Lehigh Northampton Airport Authority Police Department
16. Shawn Bognar, Security Professional, Lehigh Valley Mall
17. Craig Jones, Security Professional, Lehigh Valley Mall
18. Kristine Garcia, TGI Friday's Restaurant
19. Michael Schuler, TGI Friday's Restaurant
20. Brittany Knauss, Paulie's Family Restaurant
21. Jeremy Korpics, Stirling Paints
22. Andrew Grason, Stirling Paints
23. Charlee McWilliams
24. Brandi Jo Marsteller

The government reserves the right to supplement this witness list as may be required.

**IV.     LEGAL AND EVIDENTIARY ISSUES**

In addition to the pending motions discussed above, the government contemplates the following legal and evidentiary issues might arise during trial.

    **A.     Defendant's Intention to Cross Exam Witness Marsteller about a prior criminal conviction**

In his motion to motion to admit past "bad acts" of a presumed trial witness, doc. at no. 19, the defendant indicated that he intends to cross-examine Marsteller about her prior conviction for DUI, which occurred on April 13, 2012. Deft's Mot. at p. 2, fn 1. Upon receiving the defendant's motion, the government confirmed that, consistent with the defendant's contention, Marsteller was indeed subject to court supervision during the time period encompassed by the charges in this case. The government has no objection to the defendant so inquiring about the status of Marsteller's supervision.

    **B.     Use of Summary Charts**

The government intends to introduce as evidence charts summarizing evidence regarding the telephone calls made from the subject telephone, as well as the location of that telephone during pertinent periods of time. As discussed above, the Court has already ruled that these records are admissible in the government's case-in-chief.[4] Summary charts of these records are then admissible pursuant to Federal Rule of Evidence 611(a) and as substantive evidence pursuant to Rule 1006. Rule 1006 provides: "The contents of voluminous writings, recordings, or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary, or calculations." Summaries of telephone records, as offered here,

---

[4] The summaries that the government intends to introduce at trial are substantially the same as those admitted into evidence during the aforementioned suppression hearing in this matter.

are standard fare at trial and appellate courts "regularly affirm[] the use of such charts." *United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003); *see, also, i.e., United States v. Saldana*, 473 F. App'x 118, 123 (3d Cir. 2012) (affirming trial court's admission of chart summarizing telephone records).

        Respectfully submitted,

        LOUIS D. LAPPEN
        Acting United States Attorney


        /s/ John Gallagher
        JOHN GALLAGHER
        Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that on this day I caused a copy of the Government's Trial Memorandum be served by electronic filing upon:

>Joshua E. Karoly, Esquire
>527 Hamilton Street
>Allentown, PA 18101

>_____/s/_____
>JOHN GALLAGHER
>Assistant United States Attorney

Date: July 28, 2017